GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
THOMAS H. FELL, ESQ., Nevada Bar No. 3717
E-mail: tfell@gordonsilver.com
JOHN P. WITUCKI, ESQ., Nevada Bar No. 10800
E-Mail: jwitucki@gordonsilve.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
[Proposed] Attorneys for Debtor

E-Filed 12-17-10

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

In re:

TWAIN CONDOMINIUMS, LLC,

Debtor.

Case No.: 10-33323-LBR
Chapter 11

Date:  OST Pending
Time:  OST Pending

**DECLARATION OF RONI AMID IN SUPPORT OF EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER PURSUANT TO BANKRUPTCY RULE 4001(b) AND LR 4001(b): (1) PRELIMINARILY DETERMINING EXTENT OF CASH COLLATERAL AND AUTHORIZING INTERIM USE OF CASH COLLATERAL BY DEBTOR; AND (2) SCHEDULING A FINAL HEARING TO DETERMINE EXTENT OF CASH COLLATERAL AND AUTHORIZING USE OF CASH COLLATERAL BY DEBTOR**

I, Roni Amid, hereby declare as follows:

1. I am over the age of 18 and am mentally competent and I make this declaration in support of the Emergency Motion For Entry Of An Interim Order Pursuant To Bankruptcy Rule 4001(b) And LR 4001(b): (1) Preliminarily Determining Extent Of Cash Collateral And Authorizing Interim Use Of Cash Collateral By Debtor; And (2) Scheduling A Final Hearing To Determine Extent Of Cash Collateral And Authorizing Use Of Cash Collateral By Debtor (the "Motion").[1]

2. Except as otherwise indicated, all of the facts set forth in this Declaration are

---

[1] All capitalized, undefined terms shall have the meanings ascribed to them in the Motion.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102702-001/1093592.doc

based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

3. Attached hereto as <u>Exhibit 1</u> is a summary of projected income and expenses for the first four (4) months following the Petition Date (the "Budget"), which four (4) months conclude on April 30, 2011.

4. Through the Motion, the Debtor requests that it be entitled to use Cash Collateral on an emergency interim basis pending the Final Hearing in accordance with the Budget, which is necessary to avoid immediate and irreparable harm to the Debtor and the bankruptcy estate. Without the authority to use of Cash Collateral, the Debtor will be forced to cease its operations, thereby eliminating its ability to reorganize.

5. The Debtor is a Nevada limited liability company. I am the Debtor's managing member.

6. The Debtor owns and operates 192 noncontiguous individual condominium units within a 254 unit condominium complex known as Twain Estates, which complex is located on the northwest corner of South Arville Street and West Twain Avenue ("Twain Estates"). The Debtor's 192 units are scattered throughout the 56 two story garden and townhouse style buildings. The property was originally built as an apartment complex in 1983 but was mapped and recorded as condominium units in October 2005 with the intention to sell as individual units. After the condominium sales halted in September 2008, the remaining 192 unsold units (the "192 Units") were reverted back to apartment rental units. The 192 Units fall into one of eight unit types: 45 are studio units with 485 square feet per unit; 2 studio units are 515 square feet per unit; 62 are one bedroom/one bath units with 719 square feet per unit; 7 are one bedroom/one bath units with 726 square feet per unit; 34 are one bedroom/one and a half bathroom units with 796 square feet per unit; 7 are two bedroom/two bathroom units with 974 square feet per unit; and 35 are two bedroom/two and a half bathroom townhouse units with 1,041 square feet per unit. Along with the 192 Units, the overall complex also has two swimming pools, two spas, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102702-001/1093592.doc

2

two laundry rooms and is surrounded by concrete block wall on the back sides of the complex and gated fence on the front sides of the complex (collectively, the "Property").

7. On April 27, 2006, a Construction Loan Agreement was entered into between the Debtor and CNB in the amount of $20,370,000.00, with a maturity date of November 1, 2007 (the "Loan"). Attached hereto as <u>Exhibit 2</u> is a copy of the Construction Loan Agreement.

8. The Construction Loan Agreement is secured by a Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") dated April 27, 2006 which secures, among other property, the Debtor's real property, all right, title, and interest to its leases and occupancy agreements affecting its real property, and all rents, income, receipts, revenues, royalties, issues and profits arising or issuing from or out of the Debtor's lease or other occupancy agreements affecting its real property (collectively, the "Collateral"). Attached hereto as <u>Exhibit 3</u> is a copy of the Deed of Trust.

9. The Construction Loan Agreement was for the purpose of purchasing, rehabilitating and converting the Property to condominiums and to make improvements thereto.

10. On March 25, 2009, the Construction Loan Agreement was revised pursuant to a Loan Revision Agreement, whereby the Loan's principal balance was reduced to $11,404,234.08, and the maturity date was extended to April 1, 2012. Attached hereto as <u>Exhibit 4</u> is a copy of the Loan Revision Agreement.

11. Also on March 25, 2009, the Debtor and CNB entered into an Amendment To Construction Loan Agreement (the "Amendment"). Attached hereto as <u>Exhibit 5</u> is a copy of the Amendment.

12. Section 8 of the Amendment amended Section 11 of the Construction Loan Agreement to impose a remargin requirement. The Amendment stated that if an appraisal of the Property indicated that the ratio of the outstanding principal balance plus any remaining undisbursed funds to the then fair market value of the Property exceeded ninety (90%) percent ratio or less, then the Debtor was obligated to pay to CNB, upon CNB's demand, as a principal reduction of the Loan, such amount as was necessary to reduce the ratio to ninety (90%) percent or less.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102702-001/1093592.doc

3

13. On January 8, 2010, CNB issued a notice requiring a remargin of the Loan by no less than $1,774,234.00 (the "Remargin Amount") pursuant to Section 8 of the Amendment (the "Remargin Notice"). Attached hereto as <u>Exhibit 6</u> is a copy of the Remargin Notice.

14. The Remargin Notice provides that the Debtor's failure to pay the Remargin Amount within 30 days would result in an event of default permitting CNB to exercise its rights and remedies under the Loan documents.

15. The Debtor thereafter stated to CNB, both orally and in writing, that it objected to the Remargin Amount.

16. Ignoring such objections, on February 9, 2010, CNB sent a default notice to the Debtor (the "Default Notice"). Attached hereto as <u>Exhibit 7</u> is a copy of the Default Notice.

17. Notwithstanding the Default Notice, the Debtor has continued to make all monthly payments required by the Loan Revision Agreement until December 2010.

18. On November 4, 2010, CNB initiated the process to proceed with foreclosure sale of the Property by issuing a Notice of Trustee's Sale. The Trustee's Sale was initially set to occur on December 1, 2010, and was continued until December 16, 2010. Attached hereto as <u>Exhibit 8</u> is a copy of the Notice of Trustee's Sale.

19. The Debtor's revenue is derived primarily from apartment rental income. As set forth in the Budget, for the four (4) month period commencing on the Petition Date and concluding on April 30, 2011, the Debtor has proposed a budget that anticipates a cash balance of no less than $40,300 per month during the budgeted period. Thus, at all times the Budget shows positive cash flow after payment of expenses.

20. On the Petition Date, the Debtor had cash and cash equivalents located on the Property as of the Petition Date (the "Cash on Hand") and cash in its various bank accounts as of the Petition Date (the "Deposit Accounts") in the approximate aggregate sum of $10,963.

21. The Debtor cannot meet its ongoing postpetition obligations unless it has the immediate ability to use Cash on Hand, the Deposit Accounts, and the cash generated or received by the Debtor from and after the Petition Date (the "Postpetition Cash"). In the absence of such use, immediate and irreparable harm will result to the Debtor, its estate, and its creditors, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102702-001/1093592.doc

4

will render an effective and orderly reorganization of the Debtor's business impossible.

22. An integral aspect of maintaining the Debtor's business operations is the Debtor's ability to use Cash on Hand, the Deposit Accounts, and Postpetition Cash to maintain a sufficient level of working capital in order to pay ordinary course obligations such as those to their employees, vendors, utilities, taxing authorities, and to pay for necessary ordinary course property maintenance and projects.

23. On the Petition Date, substantially all of the Debtor's Cash on Hand and Deposit Accounts were neither in the possession of nor under the control of CNB.

24. As exemplified by the Budget, the Debtor is solely seeking to utilize the Cash Collateral to maintain the Property in optimal condition and to maximize its occupancy. Each expense included within the Budget is a necessary expense to maintain, preserve, and/or operate the Property, which is the sole means of generating revenue, thereby increasing the value of the Property and providing the resources for the Debtor to reorganize.

25. The Debtor believes that the value of the Collateral is more than the amounts due and owing to CNB under the Loan Revision Agreement as of the Petition Date.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this __/7__ day of December, 2010.

_____
RONI AMID

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102702-002/1093592_1.doc